**In re Joseph T. DUGGAN, Jr., Debtor.**

**Bankruptcy No. 90–41261.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 15, 1991.

Richard P. Salem, pro se.

H. Hoover Garabedian, Worcester, Mass., for debtor.

## OPINION IN SUPPORT OF CONTEMPT ORDER

JAMES F. QUEENAN, Jr., Chief Judge.

The Trustee, Richard P. Salem, moves for an order declaring the Debtor, Joseph T. Duggan, Jr., to be in contempt of the court's order of August 7, 1991, and for appropriate sanctions. That order required the Debtor to surrender to the Trustee, by August 29, 1991, numerous items of property which had been listed on the Debtor's schedules, including equipment valued at $1,345,000 and records on receivables in the sum of $1,897,089.

■ It was undisputed at the hearing that the Debtor had not complied with the August 7th order. The contention of Debtor's counsel, as best I can understand it, is that a civil complaint by a bank against the Debtor has criminal overtones with ramifications concerning the privilege against self-incrimination. That is no defense here.

I find that the Debtor has intentionally and willfully, without just cause, failed and refused to comply with the August 7th order.

■ Determining the appropriate sanction is more problematic. This case has been a protracted struggle between the Trustee and the Debtor. I will recount just a few of the contests. By order of June 24, 1991, I sustained the Trustee's objection to the Debtor's claim to exemptions on the ground that the Debtor's exemption claim under 11 U.S.C. § 522(d) (1988) was not supported by that statute. Denial of exemptions is therefore not an available sanction here.

Nor can I sanction the Debtor by denying him the privilege of a discharge from his debts. I have already denied his discharge pursuant to the Trustee's prior complaint seeking denial of discharge under 11 U.S.C. § 727 (1988) on the ground that he has concealed records and property of the estate. At the pretrial on that complaint, the Debtor through counsel consented to the denial, and judgment to that effect was accordingly entered.

A monetary sanction would not be appropriate. There is no reason to expect that the Debtor would comply with a monetary judgment any more readily than he has complied with the order which is the subject of the present motion. And even if the judgment were paid, the money would likely come from property which should have been turned over to the Trustee in the first place.

Incarceration is therefore the only alternative. Incarceration would perhaps be the most appropriate sanction even if others were available. It can be conditioned upon continued noncompliance with the August 7th order, so as to end when the court finds that the Debtor has complied with the order. The coercive effect of such a sanction is obviously far stronger than that of an order imposing monetary sanctions or one denying exemptions or the right to a discharge. Its conditional nature would demonstrate that I seek to promote the proper administration of this estate and not to punish the Debtor. A separate judgment has accordingly entered incarcerating

the Debtor until such time that he complies with the order of August 7th as certified by the Trustee or as determined by the court after a hearing.

■ The Debtor has not contested the power of the court to impose such a sanction. There is nevertheless sufficient disagreement concerning a bankruptcy judge's civil contempt powers that some brief observations on the subject are in order.

■ I emphasize that this is civil contempt rather than criminal contempt, notwithstanding the type of sanction imposed. Civil contempt serves to either: (1) compel or coerce obedience to a court order or (2) compensate parties for another's noncompliance with a court order. *United States v. United Mine Workers of America*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701–702, 91 L.Ed. 884 (1947); *In re Haddad*, 68 B.R. 944, 952 (Bankr.D.Mass.1987). Criminal contempt, conversley, serves to vindicate the dignity of the court. *In re Better Homes of Virginia, Inc.*, 52 B.R. 426, 430 (E.D.Va.1985), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986); *In re Haddad*, 68 B.R. 944, 954 (Bankr.D.Mass.1987). The sanction for criminal contempt is imposed by a federal court as punishment for an act in contempt of its authority committed in or near its presence in obstruction of the administration of justice, or for an act committed outside of its presence in disobedience or resistance of its lawful order. 18 U.S.C. § 401 (1988). The order here is for the benefit of the Trustee in order to permit administration of the estate. It is quite different from the criminal contempt order imposing a fixed term of incarceration which was entered by the bankruptcy judge in *In re Hipp*, 895 F.2d 1503 (5th Cir.1990) and declared by the Fifth Circuit to be beyond the power of the bankruptcy judge.

There is even some disagreement concerning a bankruptcy judge's civil contempt powers. That disagreement, surprisingly, extends to orders in a core proceeding such as the core proceeding we have here involving a turnover order under 28 U.S.C. § 157(b)(2)(E) (1988). I have treated the subject at some length in *In re Haddad*, 68 B.R. 944 (Bankr.D.Mass.1987), and I will not repeat that discussion here. It suffices to say that civil contempt powers are expressly granted to the bankruptcy court by 11 U.S.C. § 105(a) through its authorization for the court "taking any action or making any determination necessary or appropriate to enforce or implement court orders ...".

Three courts of appeal have dealt with the issue. Ignoring the quoted language in § 105(a), the Ninth Circuit has held that the bankruptcy court has no civil contempt powers. *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987). The Tenth and Fourth Circuits, on the other hand, read § 105(a) as an unambiguous grant of civil contempt powers. *In re Skinner*, 917 F.2d 444 (10th Cir.1990); *In re Walters*, 868 F.2d 665 (4th Cir.1989). Both *Skinner* and *Walters* concerned monetary sanctions against a non-debtor, not incarceration of a debtor under the rather unique circumstances of the present case. The *Skinner* decision summed up the matter rather succinctly: "Civil contempt proceedings arising out of core matters are themselves core matters." 917 F.2d at 448.

The rules of procedure promulgated under the Bankruptcy Code take a position on this question of substantive law. Under Bankruptcy Rule 9020, timely objection to any order of contempt for conduct outside the presence of the bankruptcy judge, even one entered in a core proceeding, requires a review by the district court pursuant to the procedure set forth in Rule 9033. The latter rule, however, expressly applies only to noncore proceedings. As stated in the Advisory Committee notes, Rule 9020 was promulgated at a time when no courts of appeal had spoken on the subject of the bankruptcy court's contempt powers. The Advisory Committee notes accordingly say that the rule "recognizes that bankruptcy judges may not have the power to punish for contempt." However, by purporting to require noncore treatment of all contempt orders, even those entered in a core proceeding, Rule 9020 does more than recognize the question of whether a civil contempt proceeding is core or noncore.

Bankruptcy Rule 9020 is not determinative. Section 2075 of Title 28 was amended by § 247 of Public Law 95–598, 92 Stat. 2549. As a result, § 2075 no longer contains a sentence which previously gave the bankruptcy rules priority over any conflicting provisions in the prior Bankruptcy Act. That sentence read: "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Section 2075 now declares that the bankruptcy rules "shall not abridge, enlarge, or modify any substantive right." Legislative history makes it clear that the statute will prevail over the rules in the event of any inconsistency, by stating: "Rules promulgated under Section 2075 will no longer be permitted to be inconsistent with the statute. To the extent a rule is inconsistent, the statute will govern." H.R.Rep. No. 595, 95 Cong., 1st Sess. 449 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6405.

As we have seen, Section 105(a) contains a clear grant of contempt powers to the bankruptcy court, so that contempt in a core proceeding such as this turnover proceeding is not subject to de novo review under 28 U.S.C. § 157(c)(1) (1988) and Rule 9033. De novo review would in any event be of little consequence here because there is no issue of fact concerning compliance with the August 7th order. Thus it makes no practical difference whether a finding of contempt is made as a determinative finding or as a proposed finding to be reviewed by the district court. The fact of the Debtor's contempt is inescapable. The only real question is one of procedure—whether any contest of today's order must be made by review under Rule 9033 or by normal appellate process. In my view, the proper procedure would be the normal appellate process, but that it not my concern.

What is my concern is that the Trustee's obligation to administer this estate not be frustrated and his authority not be flaunted. Today's order is designed to enforce that obligation and authority.

#### ORDER

The Trustee, Richard P. Salem, having moved for an order declaring the Debtor, Joseph T. Duggan, Jr., in contempt of the court's Order of August 7, 1991, and for appropriate sanctions, and the court having today issued a separate opinion containing findings of fact and conclusions of law, in accordance with that opinion, it is

ORDERED and ADJUDGED, that:

1. The Debtor, Joseph T. Duggan, Jr., is declared in contempt of the court's Order of August 7, 1991.

2. As the sanction for such contempt, the Debtor shall be incarcerated until he purges himself of the contempt as certified by the Trustee, Richard P. Salem, or as determined by the court after a hearing.

3. In carrying out this order, the United States marshalls are authorized to use whatever force is reasonably necessary in order to arrest and restrain the Debtor, and may do so after normal business hours. If the marshalls arrest the Debtor during a weekend, they may detain him over the weekend.