39 F.3d 1192
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 In re STEELE CATTLE, INC., Debtor.
STEELE CATTLE, INC., Appellant,
v.
ESTATE of Ruben L. CRIST, Appellee.
In re Larry Dale STEELE and Arlyce June Steele, Debtors.
Larry Dale STEELE and Arlyce June Steele, Appellants,
v.
ESTATE of Ruben L. CRIST, Appellee.
In re STEELE CATTLE, INC., Debtor.
STEELE CATTLE, INC., Appellant,
v.
Marie CRIST, Conservator for the Estate of Ruben L. Crist, Appellee.
In re Larry Dale STEELE and Arlyce June Steele, Debtors.
Larry Dale STEELE and Arlyce June Steele, Appellants,
v.
Marie CRIST, Conservator for the Estate of Ruben L. Crist, Appellee.
In re Larry Dale STEELE and Arlyce June Steele, Debtors.
Larry Dale STEELE and Arlyce June Steele, Appellants,
v.
ESTATE of Ruben L. CRIST, Appellee.
In re STEELE CATTLE, INC., Debtor.
STEELE CATTLE, INC., Appellant,
v.
ESTATE of Ruben L. CRIST, Appellee.
 Nos. 94-3036, 94-3037, 94-3038, 94-3039, 94-3040, 94-3041.
 United States Court of Appeals, Tenth Circuit.
 Nov. 1, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before MOORE and ANDERSON, Circuit Judges, and BRIMMER,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument. Appellants' request for oral argument is denied.
 
 
 3
 Debtors Larry and Arlyce Steele and Steele Cattle, Inc., appeal from the district court's affirmance of the bankruptcy court's order finding them in civil contempt of court and ordering Larry and Arlyce Steele incarcerated until they comply with certain terms of their Chapter 11 reorganization plan. Though contempt orders are generally not final orders for appeal purposes, there is no ongoing underlying action other than the general bankruptcy proceeding. We therefore conclude that the order is final, see O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1208 (10th Cir.1992), and that we have jurisdiction under 28 U.S.C. 158(d) and 1291. See also Mountain Am. Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 446 (10th Cir.1990) (acknowledging jurisdiction over civil contempt order).
 
 
 4
 The background and procedural history of these cases are fully explained in the district court's order affirming the bankruptcy court, and we only briefly recount those aspects most relevant to the appeal. As part of their reorganization plan, debtors agreed to establish and make payments to an escrow account pending resolution of a disputed debt allegedly owed to the Crist Estate. The validity and amount of the debt were to be determined in a separate state court action, which is discussed in Steele v. Guardianship & Conservatorship of Crist, 840 P.2d 1107 (Kan.1992). No state court judgment was filed in the bankruptcy court. The Crist Estate's claim therefore remained at issue, and the escrow requirement remained in force.
 
 
 5
 In disregard of the reorganization plan, debtors neither set up nor made any payments to the escrow account. The Crist Estate filed an application for an order to show cause why debtors should not be held in civil contempt for failing to comply with the plan. After notice, briefing and hearings, the bankruptcy court found debtors in civil contempt and ordered the Steeles held in the custody of the United States marshal. Execution of the contempt order was stayed pending appeal to the district court. There is no indication in the record that debtors have yet been incarcerated.
 
 
 6
 As they did in the bankruptcy and district courts, debtors spend much of their effort arguing the invalidity of the underlying debt allegedly owed to the Crist Estate. As the other courts recognized and fully explained to debtors, that issue is irrelevant to the contempt issue because the contempt order stems from debtors' failure to obey the bankruptcy court's order to comply with debtors' own agreement to make escrow payments. It has nothing to do with the validity of the debt itself, which debtors specifically agreed was for state court resolution. A bankruptcy court has jurisdiction and authority to order compliance with its own orders. See Skinner, 917 F.2d at 447.
 
 
 7
 Debtors also base much of their argument on their contention that the bankruptcy court found them in criminal rather than civil contempt. Again, that is clearly not the case. The Steeles were ordered incarcerated only until debtors began complying with the reorganization plan. This is the "paradigmatic coercive, civil contempt sanction." International Union, United Mine Workers v. Bagwell, 114 S.Ct. 2552, 2557 (1994). Debtors can "purge the contempt" and obtain their release by committing an affirmative act, and thus "carr[y] the keys of the prison in [their] own pocket." Id. at 2558 (quotation omitted).
 
 
 8
 Debtors also claim that the contempt order places the Steeles in "debtors prison." Debtors confuse the ideas of being imprisoned because they cannot pay their debts with being imprisoned because they refuse to pay their debts. One of the bankruptcy court's hearings delved specifically into whether debtors had the assets to make the escrow payments, and the court found the evidence showed they did. Debtors do not appeal this finding to us, and may not have appealed it to the district court. The bankruptcy court found that levying monetary sanctions for debtors' contempt of court might hurt other creditors and there was no indication debtors would comply with a monetary sanction. It therefore concluded that incarceration was needed to coerce debtors' compliance with the plan. We see no error in that conclusion and note that other courts have reached that same conclusion in dealing with recalcitrant parties in bankruptcy cases. Commercial Banking Co. v. Jones (In re Maxair Aircraft Corp.), 148 B.R. 353, 359 (M.D.Ga.1992); In re Duggan, 133 B.R. 671, 672 (Bankr.D.Mass.1991).
 
 
 9
 Debtors contend that the contempt proceedings violated Bankruptcy Rule 9020(b) because they were not initiated by the court, United States Attorney, or other attorney appointed for that purpose. We disagree. The rule states who may initiate the proceedings but does not necessarily limit initiation to those parties. Moreover, unlike criminal contempt where the primary beneficiaries are the court and the public interest, this is civil contempt where the primary beneficiary is the party seeking performance of a particular act. Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses, 622 F.2d 496, 499-500 (10th Cir.1980). Thus, the most likely and appropriate initiator is the unpaid creditor who has the most interest in the matter.
 
 
 10
 Debtors claim that the bankruptcy court's notices of the proceedings were inadequate because they "did not contain the statement of the essential facts constituting the contempt charge and describing the contempt as criminal or civil." This contention fails for several reasons. The notices stated that a hearing would be held to consider the Crist Estate's application for a show cause order. That application provided all the essential facts and stated that this was a civil contempt proceeding. Debtors responded to the notice and objected to the application with no indication that they did not know the "essential facts" or whether the proceedings were for civil or criminal contempt. In addition, debtors have not indicated how they were prejudiced in any manner by the allegedly inadequate notices. See Rule 9005 regarding harmless error.
 
 
 11
 Finally, debtors contend that the contempt order is invalid on the basis that the bankruptcy court did not have jurisdiction to enter it. They filed objections to it pursuant to Rule 9020(c), and they argue that this required de novo review by the district court under Rule 9033, which the district court refused to do. We conclude that regardless of whether Rule 9033 applies in this case, the contempt order is valid.
 
 
 12
 Rule 9020 governs contempt proceedings generally, and Rule 9033 provides for district court review of findings of fact and conclusions of law in non-core proceedings. Rule 9020(c) states that when a bankruptcy court issues a contempt order,
 
 
 13
 [t]he order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.
 
 
 14
 Noting that this was a core proceeding and that "[c]ivil contempt proceedings arising out of core matters are themselves core matters," Skinner, 917 F.2d at 448, the district court found Rule 9033 inapplicable. It stated that 28 U.S.C. 157 provided the appropriate basis for appellate review for core proceedings. It therefore reviewed the order under that section, applying a clearly erroneous standard of review to the bankruptcy court's factual findings
 
 
 15
 We are not as certain as the district court that Rule 9033 should be limited to contempt orders in non-core proceedings. But see In re Duggan, 133 B.R. at 673-74. Rule 9033 appears to provide the review framework for all contempt orders. In fact, de novo review under Rule 9033(d) by an Article III court may be required to preserve the constitutionality of a bankruptcy court's contempt power. Skinner, 917 F.2d at 450.
 
 
 16
 We need not decide this issue, however. The district court did review the contempt order, and as would be the case under Rules 9020(c) and 9033, the order was not executed prior to that review. Though the district court applied a more deferential review to the bankruptcy court's factual findings than the de novo review required under Rule 9033, that does not matter here because debtors did not object to the bankruptcy court's factual findings. Debtors also did not seek to introduce any additional evidence. Any error by the district court would therefore be harmless.
 
 
 17
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation