In re **BURKMAN SUPPLY, INC., Debtor.**

No. 1:97–CV–1081.
Bankruptcy No. GM96–90125.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 10, 1998.

## OPINION

ROBERT HOLMES BELL, District Judge.

Before the Court is a report and recommendation issued by United States Bankruptcy Judge James D. Gregg on December 31, 1997. The report and recommendation was issued pursuant to a motion by the United States Trustee seeking the imposition of sanctions against Dennis Burkman. The report and recommendation recommends that as a sanction Dennis Burkman be apprehended due to his failure to comply with the orders of the Bankruptcy Court regarding such matters as filing schedules. Dennis Burkman has failed to file any objections to the Bankruptcy Judge's report and recommendation.

The Court has reviewed the record and finds the following facts to be present. An involuntary bankruptcy petition was filed against Burkman Supply, Inc. in the spring of 1996. A response was filed by counsel for Burkman Supply, Inc. on July 31, 1996. However, on December 6, 1996, the Bankruptcy Court granted the motion of Burkman Supply's counsel to withdraw. Counsel sought to withdraw because the principals of Burkman Supply and all others connected with the company had failed to communicate with counsel.

On December 17, 1996, Burkman Supply, Inc. was adjudged a debtor under chapter 7 of Title 11 of the United States Code. However, Burkman Supply, Inc. failed to comply with Bankruptcy Rules and local court rules regarding the preparation and filing of schedules, statements, and a matrix of creditors. Consequently, Dennis Burkman was designated as the debtor pursuant to Bankruptcy Rule 9001(5) by order of the Bankruptcy Court. On January 15, 1997, the Bankruptcy Court ordered Dennis Burkman to file the necessary schedules and statement of financial affairs to complete the proper administration of the bankruptcy estate. On January 27, 1997, the Bankruptcy Court entered an Order to Show Cause for Failure to File Schedules. Dennis Burkman was ordered to appear before the Bankruptcy Court on March 26, 1997, to show cause why he should not be held in contempt for his failure to comply with the Bankruptcy Court's orders. Dennis Burkman did not appear at the show-cause hearing. On April 8, 1997, the Bankruptcy Court held Dennis Burkman in contempt of court. However, the court did not impose sanctions at the time. The court stated that it would consider the imposition of sanctions upon a motion filed by the Chapter 7 trustee or the United States Trustee. Pursuant to a motion for imposition of sanctions, the Bankruptcy Judge issued a report and recommendation. The record before this Court indicates that the orders in question were served upon Dennis Burkman at his three known addresses.

After reviewing the Bankruptcy Judge's report and recommendation, this Court finds no clear error in the record. For the reasons stated below, this Court finds that it is not necessary for the bankruptcy court to take the additional step of a report and recommendation when it imposes sanctions pursuant to a civil contempt order.

## I.

 The role and authority of a bankruptcy court turns on whether this was a civil or criminal contempt proceeding. "Civil contempt serves to either: (1) compel or coerce obedience to a court order or (2) compensate parties for another's noncompliance with a court order." *In re Duggan,* 133 B.R. 671, 673 (Bankr.D.Mass.1991)(citing *United States v. United Mine Workers of America,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947)); *United States v. Bayshore Associates, Inc.,* 934 F.2d 1391, 1399 (6th Cir.1991); *Matter of Terrebonne Fuel*

*and Lube, Inc.,* 108 F.3d 609, 612 (5th Cir. 1997). "Criminal contempt, conversely, serves to vindicate the dignity of the court." *Id.* (citing *In re Better Homes of Virginia, Inc.,* 52 B.R. 426, 430 (E.D.Va.1985) *aff'd on other grounds,* 804 F.2d 289 (4th Cir.1986)). Generally a civil contempt order should be fashioned in such a way that the contemnor can comply with the order to avoid the sanction. *In re Norris,* 192 B.R. 863, 873 (Bankr. W.D.La.1995).

With respect to the issue of incarceration, the Sixth Circuit has explained that "[i]ncarceration has long been established as an appropriate sanction for civil contempt." *Bayshore Associates,* 934 F.2d at 1399. The Tenth Circuit in *Steele Cattle Inc. v. Crist,* explained that an order of incarceration which only lasts until the debtor complies with the bankruptcy court's order is the "paradigmatic coercive, civil contempt sanction." 1994 WL 596627 (10th Cir.1994)(unpublished)(quoting *International Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 828, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994)). The Supreme Court has noted that an action is civil in nature if the contemnor carries "the keys of their own prison in their own pockets." *Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966).

■ The proposed sanction in this matter is clearly civil in nature. Apprehension by the United States Marshal Service and incarceration until the contemnor complies, or arrangements securing future compliance are made, is a civil contempt sanction.

The next issue is whether a bankruptcy court has the authority to sanction for civil contempt. 11 U.S.C. § 105(a) provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

■ This Court agrees with those circuits which have found that a bankruptcy court has the authority to conduct civil contempt proceedings. The Fifth Circuit has summarized the decisions of those circuits which have found that a bankruptcy court has such authority.

> While we have not yet specifically addressed the issue of whether the bankruptcy courts have the statutory authority to conduct civil contempt proceedings, many other Circuits have. *In Re Walters,* 868 F.2d 665, 669 (4th Cir.1989) ("A court of bankruptcy has authority [under § 105] to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code."); *In Re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir.1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct [under § 105]."); *In Re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (holding that Congress granted bankruptcy courts civil contempt power under 11 U.S.C. § 105.); *In Re Hardy,* 97 F.3d 1384, 1389 (11th Cir.1996) ("Section 105 grants statutory contempt powers in the bankruptcy context."); See also *In Re Power Recovery Systems, Inc.,* 950 F.2d 798, 802 (1st Cir.1991) ("Bankruptcy Rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of procedures are given.").

*Matter of Terrebonne Fuel and Lube, Inc.,* 108 F.3d at 612–13. The Fifth Circuit agreed with the other circuits and found that "[t]he language of this provision [, section 105,] is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Id.* at 613.

■ In addition, where there is a history of non-compliance with court orders, a bankruptcy court has the power to incarcerate as a sanction for civil contempt. *In re Norris,* 192 B.R. at 873 (citing *In re Duggan,* 133 B.R. at 673–74; *In re Maxair Aircraft Corp.,* 148 B.R. 353 (M.D.Ga.1992)); *In re Winslow,*

186 B.R. 716, 722 (D.Colo.1995); *Bayshore Associates, Inc.*, 934 F.2d at 1399.

■ To the extent there is any confusion as to whether the contempt sanction arose out of a core or non-core proceeding, this Court notes that the proceeding was clearly core in nature. 28 U.S.C. § 157(b) states that "[c]ore proceedings include, but are not limited to—(A) matters concerning the administration of the estate." The Tenth Circuit in *In re Skinner,* 917 F.2d 444 (10th Cir.1990) stated "civil-contempt proceedings arising out of core matters are themselves core matters." *Id.* at 448. When making the determination, courts look to the underlying matter upon which the bankruptcy court was acting when sanctions were imposed. *In re Alpern,* 191 B.R. 107, 111 (N.D.Ill.1995). Because the filing of schedules and statements of financial affairs are clearly "matters concerning the administration of the estate," the civil contempt order at issue is a core matter.

Two bankruptcy rules speak to a district court's review of a bankruptcy court's contempt order. Rule 9020 entitled "Contempt Proceedings" states

(a) Contempt committed in presence of bankruptcy judge

Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) Other contempt

Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) Service and effective date of order; review

The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

■ A contempt order is not considered a final order under Bankruptcy Rule 9020 until a sanction has been imposed by the court. *United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 563, 566 (5th Cir.1994). Therefore, if timely objections are filed to bankruptcy court's civil contempt order after sanctions have been imposed a district court will review the matter pursuant to Bankruptcy Rule 9033.

■ Bankruptcy Rule 9033(a) explains that "[i]n non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law." However, Rule 9033 does not require a bankruptcy court to file proposed findings of fact and conclusions of law with regard to matters arising out of core proceedings. Therefore, it is not necessary for a bankruptcy judge to submit a report and recommendation when it imposes sanctions pursuant to a civil contempt order. Nevertheless, the fact that the bankruptcy judge in this matter took the additional step and submitted this matter to the Court by way of a report and recommendation does not constitute reversible error.

Consequently this Court adopts the report and recommendation of the bankruptcy judge with modifications in accordance with this opinion.

An order consistent with this opinion shall be entered.

### ORDER

In accordance with the opinion entered this date;

**IT IS HEREBY ORDERED** that the Office of the United States Marshal Service apprehend Dennis Burkman and bring him into custody. If Dennis Burkman is apprehended within the Western District of Michigan, he shall be brought before the United States Bankruptcy Court or the United States District Court for the Western District of Michigan without unnecessary delay. In the event that Dennis Burkman is brought before a Magistrate Judge in the Western District of Michigan, the Magistrate Judge shall determine whether the person in custody is Dennis Burkman, or the person in custody may waive a hearing on this matter. Upon a determination that the person in custody is Dennis Burkman, if conditions ensuring the appearance of Dennis Burkman before the Bankruptcy Court or the United States District Court for the Western District of Michigan can be arranged, Dennis Burkman shall be released. In the event that conditions ensuring Dennis Burkman's appearance can not be arranged, Dennis Burkman shall remain incarcerated until such time as his appearance before the Bankruptcy Court or this Court can be arranged.

**IT IS FURTHER ORDERED** that if the United States Marshal finds Dennis Burkman in a district other than the Western District of Michigan, Dennis Burkman shall be taken into custody pursuant to this order and removed in accordance with the following rules:

A. If Dennis Burkman is taken into custody under the order at a place less than 100 miles from Grand Rapids, Michigan, Dennis Burkman shall be brought forthwith before the United States Bankruptcy Court or the United States District Court for the Western District of Michigan.

B. If Dennis Burkman is taken into custody under the Order at a place 100 miles or more from Grand Rapids, Michigan, he shall be brought without unnecessary delay before the nearest available United States Magistrate Judge, Bankruptcy Judge, or District Judge. If he or she finds that the person in custody is Dennis Burkman, or if the person in custody waives a hearing, the Magistrate Judge, Bankruptcy Judge, or District Judge shall issue an order of removal, and Dennis Burkman shall be released on conditions ensuring his prompt appearance before the Bankruptcy Court or the United States District Court for the Western District of Michigan.